IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CR-00260-FL-RN-1

**United States of America**,

v.

**Daniel James Harris**,

Defendant.

**Memorandum & Recommendation**

Defendant Daniel Harris asks the court to dismiss the Indictment charging him with being a felon in possession of ammunition, claiming that it violates his Second Amendment rights. He also asks the court to suppress all evidence obtained in the traffic stop that led to his Indictment. Harris argues that the evidence is the fruit of an unlawful search and seizure.

After considering the parties' arguments, the undersigned finds that Harris is not entitled to the relief he requests. First, controlling case law has determined that the statute under which Harris is charged, 18 U.S.C. § 922 (g)(1), is constitutional both on its face and as applied to a person with a felony conviction like Harris. Second, the search leading to Harris's Indictment did not violate the Fourth Amendment because the officers had a reasonable suspicion he was armed. And even if the search were unconstitutional, the inevitable discovery doctrine would require the denial of Harris's motion. Officers would have discovered the magazine after searching Harris upon his arrest for the underlying state offenses. So the District Court should deny both the Motion to Dismiss the Indictment and the Motion to Suppress.

I.      Background

In late May 2024, a 911 caller informed the Dunn Police Department that a man pointed a gun at her. Mem. in Supp. at 2, D.E. 34. He then fled the scene in a golden Mercury Grand Marquis.

*Id.* Officer Damien Eason spotted that car and initiated a traffic stop. *Id.* From the driver's seat Harris allegedly reached around the vehicle despite Eason's instructions to the contrary. *Id.* Although Eason's body camera was off, Officer Tyler Herring's was on as he approached. *Id.* at 3.

Herring's footage shows that Eason ordered Harris to step out of the vehicle and put his hands on top of the car. *Id.* After Harris complied, Eason asked if Harris had anything that would poke or stick him. *Id.* Harris responded that he had a knife, patted his pocket, and reached back into the car. *Id.* Officer Eason then handcuffed him. *Id.*

Herring frisked Harris and found a handgun magazine in his pocket. *Id.* Eason also found an open container of alcohol in the front seat. *Id.* Herring then asked Harris if he was a felon. *Id.* at 4. Officers transported Harris to the police department. *Id.*

Four months later, a federal grand jury sitting in Raleigh returned an Indictment against Harris, charging him with one count: being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1). Indictment, D.E. 1.

Harris moved to dismiss the indictment (D.E. 32) and to suppress evidence from the stop (D.E. 33). The court held a hearing in May 2025, on the constitutionality of 18 U.S.C. § 922(g)(1) and the necessity for an evidentiary hearing.

The court then held an evidentiary hearing two months later where Eason and Herring testified. Tr. Of July 28, 2025 Hr'g, D.E. 54. Because Eason suggested that additional video evidence could exist, the court directed the Government to produce it to Harris and allowed Harris the opportunity to reopen the hearing. Order, D.E. 51. The Government filed notice that it served more evidence. Notices, D.E. 52–53. Harris did not seek to reopen the hearing.

**II.     Discussion**

Harris first moves to dismiss the Indictment arguing that § 922(g)(1) is unconstitutional both on its face and as applied to him. Yet Harris concedes that controlling caselaw rejects his claim. The undersigned recommends that the District Court deny Harris's Motion to Dismiss the Indictment (D.E. 32).

Harris also requests that the court suppress evidence from the traffic stop that led to his arrest. But the officers had sufficient suspicion to seize the object because Harris commented about a knife in his pocket, and Herring felt an object that could have been a knife or other weapon. And the officers' discovery of the evidence was inevitable given the underlying state offense for which a search would have taken place. So the frisk did not violate the Fourth Amendment and the exclusionary rule does not require suppression. So the Motion to Suppress should also be denied (D.E. 33).

**A.     Motion to Dismiss the Indictment**

In *New York State Rifle & Pistol Ass'n, Inc.* v. *Bruen*, 597 U.S. 1 (2022), the Supreme Court announced a new history-focused framework for assessing the constitutionality of firearm regulations. After *Bruen*, the Fourth Circuit determined that § 922(g)(1) remains "facially constitutional." *United States* v. *Canada*, 123 F.4th 159, 161–62 (4th Cir. 2024). And it concluded that *Bruen* did not abrogate its earlier precedent which foreclosed as-applied challenges to § 922(g)(1). *United States* v. *Hunt*, 123 F.4th 697, 702 (4th Cir. 2024).

The Fourth Circuit's decisions in *Canada* and *Hunt* foreclose Harris's ability to have the Indictment dismissed on Second Amendment grounds. He acknowledges this reality. Mot. to Dismiss at 12 n.1. So the District Court should deny his motion to dismiss.

### B. Motion to Suppress

#### 1. Standard

The Fourth Amendment to the Constitution provides two distinct, but related protections to the people. To begin, it states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. It then provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* "It is well settled . . . that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions." *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 219 (1973) (internal ellipses and quotation marks omitted).

One exception finds its roots in *Terry* v. *Ohio*, 392 U.S. 1 (1968). Under *Terry*, an officer may conduct a brief investigatory stop if the officer "has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States* v. *Place*, 462 U.S. 696, 702 (1983).

If there is reasonable suspicion to conduct a *Terry* stop of a suspect and the officer reasonably believes that the suspect may be armed and dangerous, the officer may then conduct a limited search for weapons, known as a *Terry* frisk. *United States* v. *Mayo*, 361 F.3d 802, 805 (4th Cir. 2004). The sole justification for a *Terry* search is protection of the officer and others nearby, *Terry*, 392 U.S. at 25–26. *See Adams* v. *Williams*, 407 U.S. 143, 146 (1972) ("The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.").

An officer does not need absolute certainty that the individual is armed. *Terry*, 392 U.S. at 27. Instead, "the issue is whether a reasonably prudent man in the circumstances would be

warranted in the belief that his safety or that of others was in danger." *Id.* Courts reviewing a *Terry* stop for reasonable suspicion must focus "on the evidence as a whole" and be mindful "of both context and the particular experience of officers charged with the ongoing tasks of law enforcement." *United States* v. *Branch*, 537 F.3d 328, 337 (4th Cir. 2008). This objective inquiry measures what an officer knew before conducting the frisk. *United States* v. *Powell*, 666 F.3d 180, 186 (4th Cir. 2011) (citations omitted).

"[C]ontraband discovered during a lawful *Terry* stop is admissible so long as the search does not exceed the bounds permitted by *Terry*." *United States* v. *Raymond*, 152 F.3d 309, 312 (4th Cir. 1998) (citing *Minnesota* v. *Dickerson*, 508 U.S. 366, 373 (1993)). Where the "contour or mass of the object makes its identity immediately apparent, the officer may lawfully seize it." *Id.* (citing *Dickerson*, 508 U.S. at 375). The search must cease once the officer recognizes that the object is neither a weapon nor contraband. *Id.* (citing *Dickerson*, 508 U.S. at 378).

A search or seizure violating these Fourth Amendment principles requires a court to bar the admission of the evidence gained from the search. *United States* v. *Wilford*, 961 F. Supp. 2d 740, 756–57 (D. Md. 2013). The exclusionary rule applies to "evidence obtained during illegal police conduct" and "evidence that is the indirect product of illegal activity." *United States* v. *Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007).

The exclusionary rule is subject to the exception of inevitable discovery. This principle allows the admission of unlawfully obtained evidence if it "ultimately or inevitably would have been discovered by lawful means." *Nix* v. *Williams*, 467 U.S. 431, 444 (1984). To apply, the government must establish two criteria by a preponderance of the evidence. First it must show "that police legally could have uncovered the evidence[.]" *United States* v. *Alston*, 941 F.3d 132, 138 (4th Cir. 2019). And second, the government must demonstrate that police would have

discovered it. *Id.* "[G]rounded in reasonableness" the inevitable discovery exception "reflects the underlying purpose of the exclusionary rule: the deterrence of illegal police conduct in the search for evidence." *United States* v. *Oliver*, No. 4:22-CR-61, 2024 WL 629969, at *8 (E.D.N.C. Jan. 29, 2024) (quoting *United States* v. *Rodriquez*, 750 F. Supp. 1272, 1277 (W.D.N.C. 1990)).

With this standard in mind, the court turns to Harris's motion to suppress.

### 2. *Terry* Frisk & Inevitable Discovery

First, Harris claims that the officers exceeded the scope of a proper *Terry* frisk. Harris argues that the plain feel fails to justify the search of his pocket because the officer only felt the outline of a magazine, which he knew was not dangerous. Mem. in Supp. at 6, D.E. 34. So the officer needed probable cause that the object was contraband. *Id.* at 6–7.

Second, Harris argues that there was no probable cause that the magazine was contraband for several reasons. To begin, magazines are not contraband under North Carolina law. *Id.* at 7. Second, at the time the officer reached into Harris's pocket, he did not yet know Harris was a felon whose possession of ammunition violated § 922(g)(1). Third, Harris maintains that the officer also had no way of knowing if there was even ammunition in the magazine. *Id.* at 8. And fourth, the officer could not have known that the ammunition was not manufactured in North Carolina. *Id.* at 9. So the government's evidence was obtained from illegal conduct and therefore must be suppressed as the fruit of a poisonous tree. *Id.* at 10.

The Government argues that both the traffic stop and the *Terry* frisk were lawful.[1] First, the officers had reasonable suspicion to frisk Harris given their purpose: responding to a call about a man matching Harris's description who pointed a gun at a woman. Resp. in Opp'n at 7, D.E. 43. So a belief that Harris may have been armed was reasonable. *Id.* Harris continued to reach around

---

[1] Although Harris referenced the validity of the stop, his brief did not develop this argument. So the undersigned will not address that claim. *See* Mem. in Supp. at 4, D.E. 34.

his vehicle and did not keep his hands on the steering wheel as directed. *Id.* He also reached for his pockets after sharing that he had a knife. *Id.* And the dimensions and shape of the magazine tracked those of a pocketknife. *Id.*

The Government contends that the evidence would have been inevitably discovered with Harris's arrest on state charges. So even if the search exceeded *Terry*, officers would have discovered the ammunition in his pocket lawfully. *Id.*

The court agrees the officers obtained the evidence through lawful means because their actions complied with the Fourth Amendment. First, several factors gave rise to reasonable suspicion that defendant was armed. When asked if he had anything that could stick or poke them, Harris stated that he had a knife. And then he touched his pocket, as if motioning where it was. *See United States* v. *George*, 732 F.3d 296, 299 (4th Cir. 2013) ("A suspect's suspicious movements can [] be taken to suggest that the suspect may have a weapon."). Pointing into the car did not overcome Harris's original gesture towards his pocket. *United States* v. *Black*, 525 F.3d 359, 365 (4th Cir. 2008) (noting that reasonable suspicion need not rule out all innocent explanations; it need only be a suspicion, albeit a reasonable one. And no matter where Harris pointed, an officer could reasonably believe he had a weapon or could reach for one. *United States* v. *Henderson*, No. 5:11-CR-00146, 2011 WL 6826424, at *7 (E.D.N.C. Nov. 4, 2011) (finding officers reasonably believed that a defendant may have a gun based on a conversation with a woman who said that he took the gun from her) *adopted by,* 2011 WL 6826420 (E.D.N.C. Dec. 28, 2011), *aff'd,* 532 F. App'x 381 (4th Cir. 2013).

Herring reasonably believed that what he felt in Harris's pocket could have been a box cutter or pocketknife. *United States* v. *Swann*, 149 F.3d 271, 276 (4th Cir. 1998) (noting that credit cards in a sock were similar enough to a box cutter to justify a seizure under *Terry*). The search

did not extend beyond the discovery of the magazine. Nor did the officer reach directly into Harris's pocket before feeling it. *See United States* v. *Vernon*, No. 2:25-CR-00004, 2025 WL 1840734, at *7 (E.D.N.C. July 3, 2025) (discussing that immediately reaching into a subject's pocket during a frisk is unreasonable because it exceeds *Terry*).

Inevitable discovery forms an additional basis to deny the motion. State offenses underlying the arrest—including driving with an open container of alcohol—would have led officers to search Harris at booking and made the magazine's discovery certain. *See United States* v. *Herman*, 828 F. App'x 894, 897 (4th Cir. 2020) (discussing that because a defendant's arrest for driving under the influence involved searching him after that arrest, his weapon would have been found). Thus, the discovery would have arisen from "circumstances other than those disclosed by the [alleged] illegal search itself." *United States* v. *Thomas,* 955 F.2d 207, 211 (4th Cir. 1992).

In sum, Harris's encounter with officers did not violate the Fourth Amendment. Even so the officers' discovery of the ammunition was inevitable. There is thus no basis to suppress the evidence, and the District Court should deny Harris's motion to suppress (D.E. 33).

### III. Conclusion

For these reasons, the undersigned recommends that the District Court deny Harris's Motion to Dismiss the Indictment, D.E. 32, and his Motion to Suppress, D.E. 33.

The Clerk of Court must serve a copy of this Memorandum and Recommendation ("M&R") on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on

them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated:  October 3, 2025

_____
Robert T. Numbers, II
United States Magistrate Judge